**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| GREATER NEW YORK MUTUAL INSURANCE COMPANY | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: SAG-17-2112 |
| BRENT E. GOLDSMITH, INC. | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Greater New York Mutual Insurance Company ("GNY") filed this negligence action against Brent E. Goldsmith, Inc. ("Goldsmith"). [ECF No. 1]. Pending before this Court is Goldsmith's Motion for Summary Judgment. [ECF No. 26]. The issues have been fully briefed [ECF Nos. 26, 27, 33], and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, Goldsmith's Motion will be granted.

## BACKGROUND

The facts below are taken in the light most favorable to GNY, the non-moving party. GNY is a subrogating insurance carrier, which, in 2016, insured Carlton Condominium, Inc., 8725 Loch Raven Boulevard, Towson, Maryland 21286 ("the Carlton"). *See* Policy, [ECF No. 27-1]. Specifically, GNY's Policy consisted of two coverage parts, Commercial Property Coverage and Commercial General Liability ("CGL") Coverage. *Id.* at 4. In the spring of 2016, Dexter Wilson, the owner of Unit 403 in the Carlton ("the Unit"), hired a plumber, Goldsmith, to disconnect his steam radiators, so that Wilson could repair and paint the Unit's interior walls. Pl.'s Compl., [ECF No. 1 ¶ 1]; Pl.'s Opp., [ECF No. 27 at 2]. "Goldsmith was quite familiar with [] Wilson, having done six or seven other jobs for him over the years." Pl.'s Opp., [ECF

No. 27 at 2]. Goldsmith removed the radiators on July 27, 2016, while the Unit was unoccupied. *Id.* At Wilson's specific request, Goldsmith did not cap the open steam pipes after disconnecting the radiators. *See id.*; Wilson Email, [ECF No. 26-4] ("In order to minimize the cost of removal[,] I asked [Goldsmith] not to cap the pipes.").[1] Because the work was being completed in July, the building's central boiler/heating system was not functioning, and, as such, there was no steam running through the pipes. Def.'s Mem., [ECF No. 26-1 at 3]; Edwards Dep., p. 50, [ECF No. 26-6 at 5] (At his deposition, GNY's expert testified that, because the heating system was not "fired up" in the summer, the building did not "have a year-round demand for steam . . . ."). According to Goldsmith, Wilson intended "to reconnect the radiators shortly after removing them" and advised Goldsmith that he would "contact [Goldsmith] when [he] was ready to have the radiators reconnected." [ECF No. 27-2 at 4-5]. Goldsmith, however, "was not contacted again regarding [the radiators] until on or about November 8, 2016, when [Goldsmith] received an emergency call from [] Wilson advising that steam was escaping into the [U]nit through the open steam piping." Def.'s Mem., [ECF No. 26-1 at 3]. Upon receiving Wilson's call, Goldsmith returned to the Unit the same day and reconnected the radiators. Pl.'s Opp., [ECF No. 27 at 3]. Because the Carlton had turned on the central boiler/heating system weeks before the steam was discovered on November 8, 2016, the interior of the Unit suffered extensive damage.

---

[1] During his telephone deposition of February 27, 2018, Wilson confirmed the authenticity of his February 28, 2017 email to Goldsmith, and that its contents accurately conveyed that he informed Goldsmith not to cap the pipes after their removal. *See* Wilson Dep., pp. 19-21, [ECF No. 26-5 at 2-4]. GNY argues that, because Wilson telephonically testified from Pennsylvania, while the court reporter remained in Maryland, his deposition testimony fails to comply with Federal Rules of Civil Procedure and is inadmissible. Pl.'s Opp., [ECF No. 27 at 2 n.1]; *see Aquino v. Auto. Serv. Indus. Ass'n*, 93 F. Supp. 2d 922, 923-24 (N.D. Ill. 2000) (stating that Federal Rules 28(a) and 30(c), together, "require[] the notary or court reporter to be in the presence of the deponent during the telephonic deposition, rather than in the presence of the attorneys conducting the examination."). GNY, however, has not demonstrated that it properly objected to the manner of Wilson's deposition. *See Aquino*, 93 F. Supp. 2d at 924 (holding that, because the defendant "objected to the manner of the deposition, i.e. during the deposition and in its motion for summary judgment," the transcripts of depositions taken telephonically outside of the physical presence of a court reporter were inadmissible). Moreover, GNY has not otherwise objected to the authenticity of Wilson's February 28, 2017 email.

*Id.* at 3.  Pursuant to "its obligations under [the Carlton's] Policy," GNY paid the Carlton $121,773.60 in remedial costs.  Pl.'s Compl., [ECF No. 1 ¶ 9]; Pl.'s Opp., [ECF No. 27 at 3].  GNY made payment directly to the Carlton, which, in turn, "remitted payment to [Wilson] to pay the contractor [he] hired" for the repairs.  Pl.'s Opp., [ECF No. 27 at 3].  GNY, through this action, seeks to recuperate its costs from Goldsmith, alleging negligence.  Pl.'s Compl., [ECF No. 1].

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Goldsmith, as the moving party, bears the burden of showing that there is no genuine dispute of material facts.  *See Casey v. Geek Squad,* 823 F. Supp. 2d 334, 348 (D. Md. 2011).  If Goldsmith establishes that there is no evidence to support GNY's case, the burden then shifts to GNY to proffer specific facts to show a genuine issue exists for trial.  *Id.*  GNY must provide enough admissible evidence to "carry the burden of proof at trial."  *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a scintilla of evidence in support of GNY's position is insufficient; rather, there must be evidence on which the jury could reasonably find for GNY.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another."  *Casey*, 823 F. Supp. 2d at 349.  Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case.  GNY "must produce competent evidence on each element of his or her

claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If GNY

fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove

an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348-49. In ruling on a

motion for summary judgment, a court must view the facts and inferences "in the light most

favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 587-88 (1986).

## ANALYSIS

Goldsmith's motion for summary judgment on GNY's negligence claim hinges on

whether Wilson qualifies as an "insured" under the Commercial Property Coverage Part that

GNY issued to the Carlton. *See* Def.'s Mem., [ECF No. 26-1 at 5-8]. Specifically, Goldsmith

argues that, as subrogee of its insured (Wilson), GNY is "bound by [his] rights and obligations"

and is subject to any defenses that may be asserted against him. *Id.* at 5. Accordingly,

Goldsmith contends that GNY's claims are barred by its insured's (Wilson's) contributory

negligence and/or assumption of the risk. *Id.* at 15-20. GNY disputes Wilson's status as its

insured,[2] Pl.'s Opp., [ECF No. 27 at 4-10], though it does not contest Goldsmith's assertion that

Wilson was contributorily negligent or assumed the risk of the property damage sustained to the

Unit, *see id.* at 4-18. Because this Court finds that GNY is a subrogee of Wilson, the insured,

Goldsmith's contributory negligence and assumption of the risk affirmative defenses defeat

GNY's claim.[3]

---

[2] GNY instead argues that the Carlton is its insured, and that Wilson simply "derivatively benefit[ed]
from [the] Carlton's insurance coverage." Pl.'s Opp., [ECF No. 27 at 9].

[3] Because Goldsmith's contributory negligence and/or assumption of the risk defenses are dispositive, this
Court will not discuss Goldsmith's remaining arguments for summary judgment, namely: (1) that any

# I. Wilson Qualifies as an Insured Under the Carlton's Commercial Property Coverage Part

Wilson qualifies as an insured under the Carlton's Commercial Property Coverage Part. The Maryland Condominium Act ("MCA") controls. *See* Md. Code Ann., Real Prop. Section 11-101, *et seq.* (West). Specifically, the MCA requires that a condominium's governing body ("council of unit owners"), *id.* § 11-109, provide both property and CGL insurance, *id.* § 11-114(a). At issue, however, is the scope of property insurance coverage that the MCA mandates – specifically, whether a condominium's master policy must only insure against property damage incurred to common elements or to the structure of a condominium, or whether it must also insure against property damage sustained in individual units. Here, GNY contends that "Wilson has no right to insured status for the purpose of property coverage under the Policy," Pl.'s Opp., [ECF No. 27 at 5], while Goldsmith argues that the MCA, after its 2009 amendments, "made the unit owners insureds under such property insurance policies," Def.'s Reply, [ECF No. 31 at 12].

Goldsmith accurately interprets the MCA. In relevant part, Section 11-114(a)(1) provides that the council of unit owners shall maintain "[p]roperty insurance on the common elements *and units*, exclusive of improvements and betterments installed in units by unit owners . . . , insuring against those risks of direct physical loss commonly insured against . . . ." Md. Code Ann., Real Prop. § 11-114 (West) (emphasis added). Meanwhile, Section 11-114(a)(2) provides that the council of unit owners shall also maintain "[CGL] insurance . . . , covering occurrences commonly insured against for death, bodily injury, and property damage arising out of or in connection with the use, ownership, or maintenance of the common elements." *Id.* § 11-114(a)(2). Importantly, Section 11-114(c) sets forth further insurance policy requirements for both property and CGL coverage, stating:

---

claim for relief by GNY should be based solely in contract; and (2) that even if negligence were a proper cause of action, GNY could not prove proximate causation. *See* Def.'s Mem., [ECF No. 26-1 at 8-15].

> Insurance policies carried pursuant to subsection (a) . . . shall provide that: (1) *For property* and casualty losses to the common elements *and the units*, exclusive of improvements and betterments installed in the units by unit owners other than the developer, *each unit owner is an insured person under the policy with respect to liability arising out of his ownership* of an undivided interest in the common elements or membership in the council of unit owners;

*Id.* § 11-114(c)(1) (emphasis added). Here, GNY relies upon the "liability arising out of" language to argue that a unit owner is an insured under a condominium's master policy only "for the purposes of 'liability' insurance – and even then – only 'arising out of his ownership of an undivided interest in the common element or membership in the council of unit owners.'" Pl.'s Opp., [ECF No. 27 at 6-7] (citation omitted). As Goldsmith demonstrates, however, GNY's sole reliance on the "liability arising out of" provision ignores subsection (c)(1)'s prefatory clause, which expressly states: "*For property* and casualty losses to the common elements *and the units*, exclusive of improvements and betterments installed in the units by unit owners other than the developer, *each unit owner is an insured person . . . .*" Md. Code Ann., Real Prop. § 11-114(c)(1) (West) (emphasis added). As such, the provision requires that each unit owner be an insured in the event of property and casualty losses to the units themselves. Narrowing the provision as GNY urges would render the prefatory phrase surplusage – because a general liability policy does not provide coverage for property damage to "the common elements and the units,"[4] if a unit owner were an insured only with respect to the general liability policy, the prefatory phrase would be meaningless. *See Lowery v. State*, 61 A.3d 794, 806 (Md. 2013)

---

[4] *Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1033 (1993) ("A hallmark of the [CGL] policy is that it insures against injury done to a third party's property, in contradistinction to an 'all-risks' policy also covering losses sustained by the policy-holder."); *Mayor & City Council of Baltimore v. Utica Mut. Ins. Co.*, 802 A.2d 1070, 1087 (Md. Ct. Spec. App. 2002) ("[CGL] insurance ordinarily provides coverage for third party casualty claims against a purchaser of insurance (the 'insured').") (internal quotation marks and citation omitted).

("[W]e read the [] statute 'so that no word, clause, sentence or phrase is rendered superfluous or nugatory.'") (citation omitted).

As Goldsmith demonstrates, *see* Def.'s Reply, [ECF No. 31 at 4-8], interpreting Section 11-114(c)(1) to require that each unit owner be an insured in the event of property and casualty losses to the units themselves is in accordance with the Maryland Legislature's express overruling of the Maryland Court of Appeals decision in *Anderson v. Council of Unit Owners of Gables on Tuckerman Condominium*, 948 A.2d 11 (Md. 2008), *superseded by statute*, 2009 Md. Laws Ch. 522 (S.B. 201); 2009 Md. Laws Ch. 523 (H.B. 287). In *Anderson*, the court consolidated two claims involving two different condominium complexes. *Id.* at 13. Specifically, two units suffered property damage, one from a leaking water heater and one from a grease fire, and both unit owners sought to have their respective council of unit owners pay the costs of the repairs. *Id.* at 13-17. Importantly, in both claims, the property damage did not extend beyond the individual units to common elements or to the Condominium's structure. *Id.* Each council of unit owners subsequently refused to pay the respective claims. *Id.* Identifying the issue, the Maryland Court of Appeals stated:

> We are called upon in this case to determine whether a condominium council of owners is required under the [MCA] . . . to repair or replace what has commonly been thought of as property included in an individual condominium unit, after a casualty loss. Specifically, this case involves Section 11–114, which imposes the duty upon the council of owners to maintain insurance on the entire condominium property, "the *common elements* and *units*, exclusive of improvements and betterments installed in *units* by unit owners," and also only imposes the duty that "[a]ny portion of the *condominium* damaged or destroyed ... be repaired or replaced promptly by the council of unit owners."

*Id.* at 22 (citations omitted) (emphasis in original). The Maryland Court of Appeals stated that, within the "context of the entire [MCA], it [is] clear that the master insurance provision was intended to cover only damage sustained to the common elements or the structure of a

condominium." *Id.* at 28. As such, the court held that the "[MCA] does not require the council of owners to repair or replace property of an owner in an individual condominium unit after a casualty loss." *Id.* at 30.

Thereafter, in 2009, the Maryland Legislature amended the MCA, and in doing so, expressly stated that it intended to:

(a)     Overturn the Court of Appeals ruling in [*Anderson*];

(b)     Place an affirmative duty on the council of unit owners of a condominium association to:
(1)     Repair damage or destruction to the condominium that originated in a unit; and
(2)     Purchase property insurance that reflects this duty; and

(c)     Make the cost of the property insurance purchased by the council of unit owners of a condominium association under this Act a common expense, except that in the case of damage or destruction originating from a unit, the payment of the property insurance deductible shall be the responsibility, up to the maximum amount provided under § 11-114(g) of the Real Property Article, of the owner of the unit where the cause of the damage or destruction originated.

2009 Md. Laws Ch. 522 (S.B. 201); 2009 Md. Laws Ch. 523 (H.B. 287). Prior to its 2009 amendments, Section 11-114(c)(1) simply read: "Each unit owner is an insured person under the policy with respect to liability arising out of his ownership of an undivided interest in the common elements or membership in the council of unit owners." *See* 2009 Md. Laws Ch. 522 (S.B. 201); 2009 Md. Laws Ch. 523 (H.B. 287). Thus, to carry out the Legislature's intent, the 2009 Amendments incorporated, for the first time, the prefatory clause (discussed above), rendering Section 11-114(c)(1) to fully read:

"*For property and casualty losses to the common elements and the units, exclusive of improvements and betterments installed in the units by unit owners other than the developer*, each unit owner is an insured person under the policy with respect to liability arising out of his ownership of an undivided interest in the common elements or membership in the council of unit owners"

2009 Md. Laws Ch. 522 (S.B. 201); 2009 Md. Laws Ch. 523 (H.B. 287) (emphasis added). As Goldsmith notes, Def.'s Reply, [ECF No. 31 at 7-8], because the Maryland Legislature expressly intended to overrule *Anderson* (and require that councils of unit owners "[p]urchase property insurance that reflects [their] duty" to "[r]epair damage or destruction to the condominium that originated in a unit"), the prefatory clause must be read as making unit owners insureds in the event of property and casualty losses to the units themselves.

Finally, GNY's reliance on case law from other jurisdictions is misplaced. *See* Pl.'s Opp., [ECF No. 27 at 8-9] (citing case law from Maine, Washington, Oklahoma, and California). GNY relies most heavily on *DiMillo v. Travelers Prop. Cas. Co. of Am.*, 789 F. Supp. 2d 194 (D. Me. 2011), to support its argument that, under the MCA, unit owners are not insureds with respect to property coverage under a condominium's master policy. Pl.'s Opp., [ECF No. 27 at 8-9]. In *DiMillo*, a condominium unit owner sustained water damage to his unit and sought to make a claim on the condominium's master property insurance policy. 789 F. Supp. 2d at 197. The *DiMillo* court looked to Maine's Condominium Act, which states, in relevant part, that a condominium's master property and liability insurance policies "must provide that: (1) Each unit owner is an insured person under the policy with respect to liability arising out of his ownership of an undivided interest in the common elements or membership in the association[.]" *Id.* at 206 (citing Me. Rev. Stat. tit. 33, § 1603-113(d)(1)). Thus, the Maine Condominium Act precisely parallels the MCA as it existed before its 2009 amendments, and as it existed in *Anderson*. *See Anderson*, 948 A.2d at 26 ("Each unit owner is an insured person under the policy with respect to liability arising out of his ownership of an undivided interest in the common elements or membership in the council of unit owners[.]"). Unsurprisingly then, as in *Anderson*, the *DiMillo* court held that Maine's Condominium Act did "not require that the condo insurer provide

property coverage to the unit owners," and that, under the specific master policy in issue, the unit owner was not an insured with respect to property coverage.  789 F. Supp. 2d at 206.

Importantly, however, the Maine Condominium Act completely lacks the prefatory provision that the MCA now contains.  *Compare* Md. Code Ann., Real Prop. § 11-114(c)(1) *with* Me. Rev. Stat. tit. 33, § 1603-113(d)(1).  Because the MCA's 2009 amendments require the council of unit owners to provide property coverage for the unit owners, and necessarily made unit owners insureds under such policies, *DiMillo*, like *Anderson*, has lost any persuasive authority it once held.[5]

In sum, the MCA requires that unit owners be insureds under a condominium's master policy for property and casualty losses sustained by the units themselves.  Wilson, as a unit owner, thus qualifies as an insured under the Commercial Property Coverage Part that GNY issued to the Carlton.

## II.     GNY is Subject to the Affirmative Defenses that Goldsmith Could Assert Against Wilson

GNY's negligence claim seeks $121,773.60 in damages that, in accordance "with its obligations under the Policy," it paid the Carlton as the cost of repairs to Unit 403.  Pl.'s Compl., [ECF No. 1 ¶ 9]; Pl.'s Opp., [ECF No. 27 at 3].  "[I]t is generally recognized that an insurer is subrogated to claims of its insured against others, whether *ex contractu or ex delicto*, once the

---

[5] Under the same rationale, Plaintiff's reliance on *Elkins v. QBE Ins. Corp.*, No. C11-5150 RJB, 2011 WL 1562386 (W.D. Wash. Apr. 21, 2011), is also unavailing.  In *Elkins*, the court relied upon the Washington Condominium Act to hold that unit owners were not insureds under a condominium's master policy and, therefore, could not recover under the policy for lost rents caused by a fire.  2011 WL 1562386, at *4-5. The Washington Act, in relevant part, parallels Maine's Act (applied in *DiMillo*), and thus lacks the prefatory clause present in the MCA.  *Compare* Wash. Rev. Code Ann. § 64.34.352(3)(a) and Me. Rev. Stat. tit. 33, § 1603-113(d)(1) *with* Md. Code Ann., Real Prop. § 11-114(c)(1).  Accordingly, *Elkins* fails to provide persuasive authority.

Furthermore, Plaintiff's two remaining cases, *May v. Mid-Century Ins. Co.*, 151 P.3d 132 (Ok. 2006) and *Adelman v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 352, 365 (Cal. Ct. App. 2001), do not interpret a corresponding state condominium statute and, therefore, have no bearing on the scope of the MCA.

insurer has indemnified the insured for his loss." *Stancil v. Erie Ins. Co.*, 740 A.2d 46, 49 (Md. Ct. Spec. App. 1999) (quoting *Travelers Indem. Co. v. Insurance Co. of N. Am.*, 519 A.2d 760 (Md. Ct. Spec. App. 1987)). Thus, as subrogee of its insured, GNY must "step into the shoes of [Wilson] in order to pursue a cause of action" against Goldsmith. *Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971, 1005 (Md. Ct. Spec. App. 2007), *aff'd*, 942 A.2d 722 (Md. 2008); s*ee also John L. Mattingly Const. Co. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1069 (Md. 2010) ("In the insurance context, [a]n insurer asserting a subrogation right is usually viewed as 'standing in the shoes' of the insured so that the insurer's rights are equal to, but no greater than, those of the insured.") (internal quotation marks and citation omitted). Importantly, GNY "can exercise no right not possessed by [Wilson], and can only exercise such right under the same conditions and limitations as were binding on [Wilson]." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 362 (Md. 2007) (internal quotation marks and citation omitted). As such, GNY is subject to the affirmative defenses that Goldsmith could have asserted against Wilson. *See Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 920 (3d Cir. 1999) ("Generally, if an insurer wishes to recover from the wrongdoer, it must assert the same claim—by way of subrogation—that the insured could have asserted against the wrongdoer, as well as be subject to the same defenses that the wrongdoer could assert in defense of the claim.").

Here, other than unsuccessfully disputing Wilson's status as its insured, GNY has failed to oppose Goldsmith's argument that its claims are barred by Wilson's contributory negligence and/or assumption of the risk. *See* Def.'s Mem., [ECF No. 26-1 at 15-20], Pl.'s Opp., [ECF No. 27]. In Maryland, contributory negligence and assumption of the risk both act as a total bar to a plaintiff's recovery. *Parks v. Miles & Stockbridge, P.C.*, No. 2123 SEPT.TERM 2014, 2016 WL

6664926, at *23 (Md. Ct. Spec. App. Nov. 10, 2016) ("Contributory negligence bars a plaintiff's recovery in Maryland") (citing *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149 (Md. 2013)); *ADM P'ship v. Martin*, 702 A.2d 730, 734 (Md. 1997) (Assumption of the risk, "if established, [] functions as a complete bar to recovery . . . .") (internal quotation marks and citation omitted). As such, because GNY failed to oppose Goldsmith's affirmative defenses, summary judgment must be granted. *See Cox v. SNAP, Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017) ("'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'") (quoting *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995)).

## CONCLUSION

For the reasons set forth above, Goldsmith's Motion for Summary Judgment, [ECF No. 26], will be GRANTED. A separate Order follows.


Dated: May 21, 2018                                     _____/s/_____

                                                        Stephanie A. Gallagher
                                                        United States Magistrate Judge